IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Dan Bellino and Lory Bellino, | ) | C.A. No. 3: 05-1459-CMC |
| | ) | |
| Plaintiffs, | ) | **ORDER and OPINION** |
| | ) | **GRANTING MOTION FOR** |
| v. | ) | **SUMMARY JUDGMENT** |
| | ) | |
| Scottsdale Insurance Company, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Defendant's motion for summary judgment. For the reasons set forth below, the court grants the motion in full.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). When the nonmoving party has the ultimate burden of proof on an issue, the moving party must identify the parts of the record that demonstrate the nonmoving party lacks sufficient evidence. The nonmoving party must then go beyond the pleadings and designate "specific facts

showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995).

## BACKGROUND

Through the present action, Plaintiffs Dan and Lory Bellino ("the Bellinos") seek recovery under a policy of insurance issued by Defendant Scottsdale Insurance Company ("Scottsdale") to Carolina Custom Pools, Inc. ("CCP"). The Bellinos filed an earlier action against CCP and its two owners for the defective construction of a swimming pool at their home. In that action, the Bellinos asserted claims sounding in contract and negligence as well as under the South Carolina Unfair Trade Practices Act ("SCUTPA").

Scottsdale initially provided CCP with a defense in the earlier action under a reservation of rights. However, Scottsdale withdrew its defense after experts for both the Bellinos and CCP issued reports which detailed the faulty workmanship in construction of the pool. Neither report suggested damage to any property beyond the pool itself.

On the day set for trial, over three years after the action against CCP was filed, the parties entered an agreement ("Covenant and Assignment") under which the Bellinos agreed to dismiss the individual defendants and not to execute against CCP's corporate assets on any judgment they might receive against CCP. In exchange, CCP assigned "its rights under the insurance policy or policies it has with insurance company," including any claim for "first party bad faith and all claims to

2

indemnification."

The typed portions of the Covenant and Assignment refer to the "Insurance Company" solely in the singular, including in a provision explaining that "the lawsuit in question was previously defended by the Trapp Insurance Services (Insurance Company)." A handwritten insertion to this phrase, however, adds "First Financial Insurance Company." This is the only definition of "Insurance Company" provided. No mention is made of Scottsdale anywhere in the document. Neither has any evidence been offered which would connect Scottsdale to either of the entities which are named.[1]

This agreement was entered either prior to or in the midst of the trial. *See* Depos. of Lory Bellino at 32-35. According to Plaintiffs, opposing counsel conceded prior to commencing trial both that he was not prepared to try the case and that his client had "built a crappy pool." *Id.* at 32-33. He, therefore, suggested that the parties "talk about what we can do to fix it." Plaintiffs then put up a small portion of their case through the testimony of Lory Bellino.

According to Plaintiffs, after some portion of this testimony was given, the judge suggested they cease hearing the testimony and "talk about what to do." *Id.* at 33. Plaintiffs also assert that the trial judge then advised them that they had "a better chance of going after the insurance company because they're the ones that should have paid this claim in the first place." *Id.* at 34; *see also id.* at 35 (stating trial judge advised the Bellinos that "the insurance company should have covered this. If you do this [referring to execution of a covenant not to sue CCP in favor of assignment of the rights against the insurance companies], this is the way to go, this is what I would advise.").[2] CCP's

---

[1] It is also unclear what form of insurance (or possibly bond) was provided by the entities which are named.

[2] There is no evidence that the trial judge had seen any insurance policy, much less the policy issued by Scottsdale, at the time he allegedly made this statement. To the extent any policy was

3

counsel, who Lory Bellino stated "hadn't even looked at this stuff" and "could have cared less and really did not want to mess with it," allegedly stated at this point that he and his client would "do everything we can possibly do to help" the Bellinos recover against the insurance company. *Id.* at 34.

It is not clear if more evidence was taken after these discussions. However, the trial judge issued an order ("State Court Order") a little over a month later which refers to and relies on additional evidence presumably offered at trial. Although the State Court Order does not acknowledge the entry of an agreement which, according to Plaintiffs' own testimony converted the previously adverse litigants into allies, it does recite that Plaintiffs withdrew their contract, warranty and SCUTPA based claims "[a]t the commencement of trial" and proceeded solely on a negligence theory.

Ultimately, the trial judge found CCP to be "negligent in its construction of Plaintiffs' pool" and awarded Plaintiffs $100,000 in actual damages as well as $27,134.18 in attorneys' fees.[3] No legal basis for the attorneys' fee award is referenced. While not broken out in the concluding paragraphs, the remainder of the order refers to the following damage components: $60,100 to tear out and rebuild

---

provided to the trial judge, it would presumably be policies issued by one or both of the entities named in the Covenant and Assignment. Thus, any statements the trial judge may have made relating to an insurance company's duties are not an indication of his interpretation of the scope of the *Scottsdale* policy. In any case, neither Plaintiffs nor their counsel could reasonably have relied on the judge's view of a dispute that was not before him, particularly in the absence of the non-party whose obligations were being discussed. Even were such reliance proper for some purposes, it can hardly be relied on to bind Scottsdale which was, as noted above, not a party to these discussions.

[3] Some of this evidence was in a form which likely would not have been accepted by the trial court had objection been raised. For example, the trial court order refers to and relies on written reports of experts, rather than on expert witness testimony. Likewise, the critical cost to rebuild element of damages was offered by Plaintiff's testimony as to a third party estimate, which estimate was also introduced, not based on first hand knowledge. State Court Order dated July 19, 2004 at 2-3. The lack of objection is consistent with Lory Bellino's testimony as to the parties true alignment at that point in time.

4

the pool; $4,400 to replace landscaping and fencing that would have to be torn up and replaced in order to replace the pool; $1,020 for electrical work that would be required for the replaced pool; $180 for costs which had not been but should have been reimbursed under the original contract; $2,200 for a retaining wall that was referenced in the contract between Plaintiffs and CCP but not installed; $325 for expert witness inspection fees; pool repair bills of $625; and pool warranty of $3,000. The remaining portion of the $100,000 was for "intangible damages" based on "extreme humiliation and embarrassment due to the condition of the pool and loss of use of the pool." State Court Order at 3. Judgment was entered against CCP in the amount of $127,134.18 based on the findings in this order.

In depositions taken in this action, the Bellinos conceded that neither of them sought medical or other treatment as a result of any emotional distress relating to the pool. There is no other evidence that either suffered any physical manifestation of the emotional distress. Lory Bellino, who allegedly suffered the majority of the emotional distress, conceded that she did not mention this particular stress to physicians who were treating her at the time for other conditions.

### DISCUSSION

The policy at issue in this action is a Commercial General Liability ("CGL") policy which covers "occurrences." "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Policy § V.12. The South Carolina Supreme Court has recently held that premature deterioration of a road due to "various negligent acts by [the contractor] during road design, preparation and construction" did not constitute an "occurrence" under identical policy language. *L-J, Inc., v. Bituminous Fire & Marine Ins. Co.*, 621 S.E.2d 33, 36 (S.C. 2005). In reaching this conclusion, the South Carolina Supreme Court joined the

"majority of other jurisdictions" which hold "that faulty workmanship standing alone, resulting in damage only to the work product itself, does not constitute an occurrence under a CGL policy." *Id.* at 35. The court also noted this conclusion was consistent with earlier South Carolina cases holding that "a CGL policy is not intended to cover economic loss resulting from faulty workmanship" and that such injuries are "part of the insured's contractual liability, not an insurable event under a CGL policy." *Id.* at 35 (citing *Century Indem. Co. v. Golden Hills Builders, Inc.* 561 S.E.2d 355, 357 (S.C. 2002); *Isle of Palms Pest Control Co. v. Monticello Ins. Co.,* 459 S.E.2d 318, 320 (S.C. App. 1994); and *C.D. Walters Constr. Co., Inc. v. Fireman's Ins. Co. of Newark,* 316 S.E.2d 709, 711 (S.C. App. 1984)).

The only evidence of any property damage in this case is damage to the pool itself as a result of the faulty workmanship. What other damage is suggested, amounting to a little over $5,400, is "damage" which may be necessitated by the pool repair work. It is not, therefore, damage which CCP's faulty workmanship has caused to occur to other property. Thus, it cannot constitute a covered "occurrence." *See Id.* at n. 4 (noting that a "CGL policy may . . . provide coverage in cases where faulty workmanship causes a third party bodily injury or damage to other property," but it does not provide coverage "*in cases where faulty workmanship damages the work product alone*" – emphasis in original ).

Plaintiffs' testimony as to emotional distress is, likewise, inadequate to support an award of damages. This is because there is no evidence of physical manifestation of the injury sufficient to support a finding of "bodily injury" under the policy.

Certain damages awarded in the action against CCP are also clearly not available in this action even if the evidence supported the finding of an occurrence. For instance, the $180 in unreimbursed

expenses from CCP's work and the $2,200 credit for a wall which was not built are clearly contract based damages. As noted in the State Court Order, Plaintiff abandoned all contract based theories and proceeded only on a negligence theory. Thus, these damages could not be recoverable under the theory pursued. Similarly, given the negligence basis of the claim, there would appear to be no grounds for an award of attorneys' fees. Thus, these fees are not recoverable from Scottsdale under its duty to indemnify CCP based on damages awarded for some negligent act.

In light of the determination that there has been no covered "occurrence," this court need not decide whether the assignment at issue reaches the Scottsdale policy. The court notes, nonetheless, that this is a serious question which may present additional grounds for entry of summary judgment in Defendant's favor. Likewise, serious questions are presented as to Plaintiffs' ability to rely on the State Court Order and resulting judgment given that the "trial" which led to entry of that order was between parties who were only nominally adverse. It is likely, therefore, that, should this matter have proceeded further, the State Court Order and resulting Judgment would be given the effect of a settlement agreement only.

## CONCLUSION

For the reasons set forth above, the court GRANTS Defendant's motion for summary judgment (Dkt No. 13).

**IT IS SO ORDERED**.

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
April 27, 2006

C:\temp\notesB0AA3C\05-1459 Bellino v Scottsdale CGL SJ.wpd

7